MONOLITH PORTLAND CEMENT COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America and R. A. Riddell, etc., Defendants.

Civ. No. 20256.

United States District Court
S. D. California,
Central Division.

April 14, 1958.

———◆———

Enright & Elliott and J. Howard Sullivan, Los Angeles, Cal., by Joseph T. Enright, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Chief, Tax Division, John G. Messer, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

MATHES, District Judge.

This cause came for trial on March 21, 1958. The Court having heard and considered all the evidence, stipulations of facts, exhibits, memoranda and argument of counsel, makes the following findings of fact and conclusions of law:

### Findings of Fact

#### I

During all times herein mentioned, the plaintiff, Monolith Portland Cement Company, a Nevada corporation, was and now is a corporation duly qualified to conduct, and is conducting, business in the State of California, with its principal office in the City of Los Angeles, State of California.

#### II

This is an action for refund of corporation income taxes for the year 1951. The taxes herein involved were paid by plaintiff to Robert A. Riddell, District Director of Internal Revenue, Los Angeles District, Los Angeles, California.

#### III

During the entire year 1951 plaintiff mined a calcium carbonate rock generally known as "limestone", which it processed by the usual and customary process steps applied in the cement industry to obtain any of the various types of Portland cement. Said processes were applied by plaintiff at its cement plant at Monolith, California, adjacent to the quarry from which plaintiff mines the limestone. The process of heating or calcining of the materials used by plaintiff caused chemical changes to occur in them to obtain cement.

#### IV

At the completion of the processes referred to above, the cement was stored in silos from which it was loaded and shipped in bulk; or from which it was bagged and loaded and shipped in bags,

#### V

The actual computed average high and low chemical analysis, made approximately each week, of the material mined by plaintiff during the year 1951 revealed a high of 87.68% calcium carbonate and a low of 82.45% calcium carbonate, or an average of 85.20% of calcium carbonate. The calcium carbonate content of plaintiff's limestone involved in this case was not high enough to qualify the material as "chemical grade limestone" within the meaning of Section 114(b) (4) (A) (iii) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 114(b) (4) (A) (iii).

#### VI

The only product sold by plaintiff during the year 1951 as a result of its limestone mining operations was Portland cement in bulk and in bag or sack containers.

#### VII

The plaintiff pays royalties for the limestone which it mines and uses in making its Portland cement.

## VIII

Plaintiff stores its bulk cement in silos at its cement plant and also at bulk storage distribution points away from its cement plant.

## IX

During the year 1951, 63.49% of plaintiff's cement sales were of bulk cement. The remaining sales were of cement placed in bag or sack containers.

## X

In the principal marketing area served by plaintiff, the market for limestone such as plaintiff mined at its quarry was negligible unless it was processed to obtain cement.

## XI

The commercially marketable mineral product obtained by plaintiff from mining during the year 1951 was bulk Portland cement at its plant at Monolith, California.

## XII

The cost of bags and sack containers and the costs attributable to bagging and sacking are not ordinary treatment processes normally applied by mine owners or operators to obtain the commercially marketable mineral product Portland cement in bulk form.

## XIII

The additional charge made by plaintiff on its sales of Portland cement sold in containers is to be eliminated from its gross sales in order to arrive at "gross income from mining". Also to be eliminated from gross sales are royalties, trade discounts, contract trucking and own fleet trucking costs, rail freight, and warehouse and bulk storage plant costs at distribution points away from plaintiff's cement plant.

## XIV

In computing net income from mining, the following items are to be eliminated from expenses: trade discounts, contract trucking and own fleet trucking costs, rail freight, warehouse and bulk storage plant costs at distribution points away from plaintiff's cement plant, and cost of bags and costs attributable to bagging.

## XV

The computation of statutory depletion allowance for the year 1951 is as follows:

| | | |
|---|---|---:|
| Sales per return | | $8,702.101.20 |
| Less: Royalties | | 133,340.02 |
| | | $8,568,761.18 |
| Less: Miscellaneous sales | | 3,201.70 |
| Cement sales | | $8,565,559.48 |
| Less: | | |
| 1. Trade discounts | $ 434,770.26 | |
| 2. Trucking—contract and own fleet costs | 815,483.36 | |
| 3. Rail freight | 212,558.53 | |
| 4. Warehouse and bulk storage plant costs at distribution points | 49,774.95 | |
| 5. Additional charge for sales in bags | 389,350.00 | |
| Total eliminations from gross sales | | $1,901,937.10 |
| Gross income from mining | | $6,663,622.38 |

Statutory depletion:

| | |
|---|---|
| 10% of gross income from mining | $ 666,362.24 |

| | |
|---|---|
| Gross income from mining (see above) | $6,663,622.38 |

| | | |
|---|---|---|
| Mining expenses | $7,689,687.54 | |

Less:

| | | |
|---|---|---|
| 1. | Trade discounts | $434,770.26 |
| 2. | Trucking costs— contract and own fleet | 815,483.36 |
| 3. | Rail freight | 212,558.53 |
| 4. | Warehouse and bulk storage plant costs at distribution points | 49,774.95 |
| 5. | Costs of bags and bagging expenses | 771,119.85 |

| | | |
|---|---|---|
| Total eliminations | $2,283,706.95 | |
| Allowable mining expense | | $5,405,980.59 |
| Net income from mining | | $1,257,641.79 |

Depletion Allowable:

Depletion—

| | |
|---|---|
| 10% of gross income from mining | $ 666,362.24 |

Limitation:

| | |
|---|---|
| 50% of net income from mining | $ 628,820.89 |
| Allowable depletion deduction | $ 628,820.89 |

## XVI

The record shows, and the Court finds as a fact, that limestone of a relatively high calcium carbonate content is known in industry and commerce as chemical or metallurgical grade limestone.

## XVII

On March 9, 1955, plaintiff duly filed its claim for refund with defendant setting forth the grounds upon which the refund was claimed and upon which this suit was commenced.

## XVIII

The defendant neither allowed nor disallowed said claim for refund and more than six months elapsed from the time of filing said claim for refund to the time of filing this suit on July 27, 1956.

## XIX

No part of the sum claimed by plaintiff has been credited, remitted or paid to the plaintiff or to any one on its account. Plaintiff was, and now is, the owner of said claim for refund and has not assigned or transferred said claim or any part thereof to others.

## XX

During the year 1951, plaintiff maintained its books and records on the ac-

crual basis of accounting and filed its return on the calendar year basis.

### XXI

Plaintiff timely filed its income tax return for the year 1951 and, based upon the Regulations of the Commissioner of Internal Revenue, computed its depletion allowance deduction which resulted in a reported income tax liability, as shown on said return, in the sum of $384,411.65 plus an interest liability in the sum of $382.49. Thereafter, in the year 1953, defendant caused said return to be audited, and assessed a deficiency in tax against plaintiff in the sum of $3,914.-97, plus interest in the sum of $367.79. The said taxes, deficiency and interest were paid by plaintiff on the following dates and in the following amounts:

| | |
|---|---:|
| March 17, 1952 | $126,000.00 |
| June 13, 1952 | 126,000.00 |
| September 16, 1952 | 75,262.55 |
| December 15, 1952 | 57,531.59 |
| February 15, 1954 | 4,282.70 |
| Total | $389,076.84 |

### XXII

Counsel for defendant United States of America waived all objections to maintenance of this action by plaintiff against said United States of America in this District upon dismissal of this action against defendant Robert A. Riddell, District Director of Internal Revenue, Los Angeles District.

### XXIII

All conclusions of law which are or are deemed to be findings of fact are hereby found as facts and incorporated herein as findings of fact.

### Conclusions of Law

#### I

This Court has jurisdiction of the subject matter and of the parties hereto pursuant to Title 28, United States Code, Section 1346(a) (1).

#### II

Plaintiff, as mine operator, mined a calcium carbonate rock generally known as "limestone" which it processed to obtain any of the various types of Portland cement.

#### III

■ "Chemical grade limestone" within the meaning of the term as used in Section 114(b) (4) (A) (iii) of the Internal Revenue Code of 1939, as amended, means a limestone which is of a relatively high calcium carbonate content.

#### IV

The calcium carbonate rock mined by plaintiff was not a "chemical grade limestone" within the meaning of the statute, and so was subject to a percentage depletion allowance of ten per centum within the provisions of Section 114(b) (4) (A) (ii) of the Internal Revenue Code of 1939, as amended.

#### V

The commercially marketable mineral product obtained by plaintiff was bulk Portland cement at its plant in Monolith, Calif., located within a distance of fifty miles from the quarry operated by plaintiff.

#### VI

Plaintiff is entitled to a depletion allowance at the rate hereinabove set forth on its gross sales of bulk cement f. o. b. its plant at Monolith, California, but adjusted for the items as set forth in the findings of fact herein and limited to fifty per centum of the net income from mining as adjusted for the items as set forth in the findings of fact herein.

#### VII

Bagging and costs attributable to bagging are not ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product bulk Portland cement.

#### VIII

Plaintiff is entitled to refund of income taxes for the year 1951 based on a percentage depletion allowance, as computed in the findings of fact herein, in the amount of $628,820.89.

## IX

Based on the percentage depletion allowance set forth above, plaintiff is entitled to refund of income taxes for the year 1951 in the amount of $264,435.41, with interest thereon at the rate of six per centum per annum as provided by law, from the following dates and upon the following portions of this amount:

| | |
|---|---:|
| March 17, 1952 | $ 1,358.57 |
| June 13, 1952 | 126,000.00 |
| September 16, 1952 | 75,262.55 |
| December 15, 1952 | 57,531.59 |
| February 15, 1954 | 4,282.70 |
| | $264,435.41 |

## X

■ The items of royalties, trade discounts, trucking (contract and own fleet costs), rail freight, warehouse and bulk storage plant costs at distribution points away from plaintiff's cement plant, additional charge for sales in bags, costs of bags and bagging expense are to be eliminated from gross sales from mining and from net income from mining as set forth in the findings of fact herein.

## XI

All findings of fact which are deemed to be conclusions of law are hereby incorporated in these conclusions of law.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered, adjudged and decreed:

(1) That this action be, and hereby is, dismissed as to defendant, Robert A. Riddell, District Director of Internal Revenue, Los Angeles District, without prejudice to the plaintiff to maintain this action against defendant United States of America within this District;

(2) That plaintiff, Monolith Portland Cement Company, a Corporation, do have and recover judgment against the defendant, United States of America, in the sum of $264,435.41, plus interest thereon, as provided by law, from the dates of payment thereof by plaintiff.